JOHN H. MOORE, Plaintiff in Error, *vs.* LEVI R. TAYLOR *et al.* Defendants in Error.

*Opinion filed October 25, 1911.*

1. TRUSTS—*a resulting trust does not arise from mere relation of debtor and creditor.* Mere proof of the relation of debtor and creditor and the purchase of land by the debtor does not establish a resulting trust in the creditor's favor, but the latter must be able to identify the specific fund or property invested and the specific property in which it is invested.

2. SAME—*party claiming resulting trust must trace fund from origin to final investment.* A party claiming a resulting trust must be able to trace the fund from its origin to its final investment, and while it is not necessary, in the case of money, to trace the par-

ticular coins or bills, yet it must be capable of identification as a fund distinguishable from all other money.

3. LACHES—*equity does not encourage stale claims.* Equity does not encourage stale claims, and unreasonable delay may be held to be a bar to equitable relief even against a trustee.

4. SAME—*when a party should be barred from asserting trust.* One who takes no action to establish a resulting trust against his guardian for more than thirty years after he has full knowledge of the facts on which he bases his claim, during which time the land has been in the adverse possession of others and the guardian and all other parties having actual knowledge of the facts have died, should be barred from asserting such trust in equity where no excuse for the delay is shown.

WRIT OF ERROR to the Circuit Court of Iroquois county; the Hon. FRANK L. HOOPER, Judge, presiding.

NELLIE B. KESSLER, (FLEMING R. MOORE, of counsel,) for plaintiff in error.

CRANGLE & VENNUM, for defendant in error Minnie Taylor.

FRANK M. CRANGLE, guardian *ad litem* for Levi R. Taylor, insane.

Mr. JUSTICE DUNN delivered the opinion of the court:

The plaintiff in error, John H. Moore, on June 9, 1910, filed a bill in chancery against his half-brother, Levi R. Taylor, and the latter's wife, for the purpose of having a resulting trust in his favor declared in certain lands in Iroquois county, the title to which was held by Levi R. Taylor. A guardian *ad litem* was appointed for Levi R. Taylor, who was insane. An answer was filed, and after a hearing the circuit court dismissed the bill for want of equity.

John H. Moore, the complainant, was born in 1850. Soon after his birth his father died. His mother later married Samuel C. Taylor, and the three lived together in

Fountain county, Indiana. On April 6, 1857, Taylor was appointed guardian of the person and estate of the complainant by the common pleas court of Fountain county. On the same day he presented to the court his petition for the sale of twenty acres of land in that county belonging to his ward, for the purpose of investment in other and cheaper lands, an order was made to sell at private sale, and the guardian reported a sale for $250 cash, which was approved by the court. No report of the purchase of any specific land by the guardian was made, but on October 3, 1859, he filed an account current, charging himself with $250 from the sale of real estate and asking credit for $22 costs paid and for $250 "paid on land in Clinton county." The record of deeds in Clinton county, Indiana, shows that about twenty months after the sale of the complainant's twenty acres his guardian began the purchase of certain land in Clinton county, and that on December 4, 1858, he obtained a deed for an undivided eighth of such land for a consideration expressed in the deed of $275. On February 22, 1859, he obtained from Rachel Lipp a conveyance of an interest in the same land, described as her widow's interest, for an expressed consideration of $800. The next day he obtained two other conveyances, each of an undivided eighth of the same land and each for an expressed consideration of $275. Nothing further is shown in regard to the title to these lands or the consideration paid for them, but on April 9, 1861, Taylor and his wife conveyed them to Rachel Lipp for an expressed consideration of $2000. Mr. and Mrs. Taylor, with the complainant, moved to Iroquois county, Illinois, and on November 9, 1861, Ellis Flower conveyed to Samuel C. Taylor and his wife forty acres of land in that county for an expressed consideration of $200. This land the Taylors conveyed to James Hoagland for an expressed consideration of $300, on May 31, 1866. On October 16, 1866, John Hunt, for an expressed consideration of $150, conveyed twenty acres

of land in Iroquois county to Samuel C. Taylor, who conveyed it to the defendant Levi R. Taylor on February 12, 1889. In 1865 two tracts of land of sixty acres each were conveyed to Mary S. Taylor, the complainant's mother,— one by Nelson Waity on January 30, for an expressed consideration of $1000; the other by J. M. Courtwright on May 3, for an expressed consideration of $600. The former tract had been mortgaged by Waity for $1000 on October 4, 1860, and the latter was mortgaged by Mrs. Taylor to her grantor to secure $300 of the purchase money. These mortgages were released on April 14, 1877. Mrs. Taylor owned these lands at the time of her death, which occurred in 1906, and by her will executed in 1904 devised them to the defendant Levi R. Taylor, the son of her second marriage. She also gave a legacy of $1000 to the complainant.

It is insisted that the $250 derived from the sale of the Fountain county land was invested in the Clinton county land, and that upon the sale of the latter Samuel C. Taylor brought the proceeds to Illinois and invested them in the lands owned by Mrs. Taylor at her death, and in the Flower tract, which was afterward sold and the proceeds invested in the Hunt tract, which was subsequently conveyed to Levi R. Taylor, and that therefore a trust resulted in favor of the plaintiff in error in all of the lands. Conceding that the investment in the Clinton county land is shown, the evidence is entirely insufficient to establish the purchase of the Illinois lands with the money of the plaintiff in error. The only evidence of the amount paid for or received from the Clinton county land is found in the statements as to the consideration contained in the deeds. These indicate the payment of $1625 for the land, only $250 of which could have belonged to the plaintiff in error. It is true that it appears that Samuel C. Taylor was a farm laborer in 1857 and that the usual wages for such labor were from eight to ten dollars a month. The witnesses who testified

fifty years later did not know of his having any property, but this is by no means conclusive that he was entirely without means or credit. So far as the evidence in this record goes he was able to make the purchase of this land for $1625, and it is not claimed that more than $250 of that amount belonged to the plaintiff in error. Upon the sale of the land for $2000 the share to which the plaintiff in error would be entitled was slightly in excess of $300. There is no evidence as to what Taylor did with the purchase money. It may have been applied to the payment of his indebtedness incurred in the purchase of the land, or otherwise. There is no evidence in regard to the purchase of the Flower forty acres except the deed. This was dated seven months after the sale of the Clinton county land. In the meantime Taylor had moved his family from Indiana to Illinois. Whether he then had any money or not, whether the land was bought for cash or on credit or was paid for by work or an exchange of property, does not appear. The only facts which can be claimed to appear are, that Taylor received about $300 belonging to the plaintiff in error and that several months later he purchased forty acres of land for $200. No connection between the two facts is shown by the evidence or can be inferred by any satisfactory or convincing argument. The case is even weaker as to the other two tracts. They were not bought until more than three years later, and there is no evidence, beyond the deeds themselves, as to the terms or manner of their purchase. Whether any funds of the plaintiff in error were then in the lands of Samuel C. Taylor or were used in these purchases is entirely a matter of conjecture. It is not enough to show that Taylor was indebted to the plaintiff in error and that he afterward bought land for an amount equal to the indebtedness. A trust does not arise merely from the relation of debtor and creditor. It is essential to the case of the plaintiff in error that he shall be able to identify the specific fund or property invested

and the specific property in which it has been invested. He must be able to trace and identify the fund from its origin to the final investment. The fact that the fund may be money does not relieve him from this necessity. "If any property, in its original state and form, is covered by a trust in favor of the principal, no change of that state and form can divest it of such trust, or give the agent or trustee converting it, or those who represent him in right, (not being *bona fide* purchasers for a valuable consideration, without notice,) any more valid claim in respect to it than they had before such change. * * * It matters not in the slightest degree into whatever other form different from the original the change may have been made, * * * for the product of a substitute for the original thing still follows the nature of the thing itself, so long as it can be ascertained to be such. The right ceases when the means of ascertainment fail, which, of course, is the case when the subject matter is turned into money and mixed and confounded in a general mass of property of the same description." (2 Story's Eq. Jur. secs. 1258, 1259.) It is not necessary to trace the particular coins or bills, but the fund must be capable of identification as a fund distinguishable from all other money or the right to pursue it must fail. *School Trustees* v. *Kirwin,* 25 Ill. 73; *Union Nat. Bank* v. *Goetz,* 138 id. 127.

The guardian *ad litem* insists upon the defense of *laches.* In 1872 Taylor submitted to the common pleas court of Fountain county, Indiana, a final report of his guardianship, setting forth that his ward had arrived at his majority and receipted for all money and assets due him, filing what purported to be such a receipt, which report was approved by the court and the guardian was discharged. In 1876, it is conceded by the plaintiff in error, he discovered the alleged misuse of his money. It is claimed that he then charged his mother and step-father with wronging him and that they did not deny it. Soon after he went to the State

of Washington, where he has since resided. Samuel C. Taylor died in 1896. For thirty years before the bringing of this suit the plaintiff in error, having complete knowledge of the facts, took no action to secure the rights which after this lapse of time he now seeks. In the meantime his mother and step-father, the two persons having actual knowledge of all the transactions involved, have died, the receipt he is alleged to have given has disappeared, he has become incompetent as a witness, and the court is now asked to take from his mother's devisee and grantee 160 acres of land upon fragments of conversations, casual declarations, supposed admissions by silence and otherwise, and upon the evidence of witnesses testifying twenty-five or thirty years after the events, the one most relied upon having been at the time the conversation to which he testified occurred, a fourteen-year-old boy. Equity does not encourage stale claims, since by lapse of time there must, of necessity, be great difficulty in ascertaining the exact facts as to the matter in controversy. Unreasonable delay has been held to be a bar to equitable relief, even against a trustee. (*Lequatte* v. *Drury,* 101 Ill. 77; *McDonald* v. *Stow,* 109 id. 40; *Hamilton* v. *Hamilton,* 231 id. 128.) Here, possession has been adverse to the plaintiff in error for thirty years,—more than the longest period of limitation fixed by the statute. In 1876 he knew that Taylor denied owing him anything and claimed to have settled with him and to be in possession of the property as owner. No excuse is shown by the plaintiff in error for his failure to assert the rights he now claims. The relation of the parties is not sufficient. This unreasonable delay ought to bar his claim in equity.

The decree of the circuit court is affirmed.

*Decree affirmed.*