(No. 24957.—

ANTONIA SPINA, Appellant, *vs.* LEONARDO SPINA, Appellee.

*Opinion filed June 15, 1939—Rehearing denied October 4, 1939.*

GEORGE A. GORDON, for appellant.

PAYTON J. TUOHY, (ALEXANDER J. MOODY, of counsel,) for appellee.

Mr. CHIEF JUSTICE WILSON delivered the opinion of the court:

The plaintiff, Antonia Spina, (appellant here,) filed an amended complaint for divorce in the superior court of Cook county against the defendant, Leonardo Spina. She also asked a finding of ownership of a one-half interest in an improved parcel of real estate conveyed to defendant and herself as joint tenants, an accounting of rents and other joint funds, and the appointment of a receiver. Defendant answered that plaintiff was not entitled to the relief sought. Thereafter, plaintiff filed a second amended complaint seeking partition of the real estate and an accounting of rents and other joint personal property. Defendant again interposed an answer and filed a counterclaim against her for divorce, charging desertion. Plaintiff denied its material allegations. The counter-claim was heard without a contest, and a decree for divorce was entered in favor of defendant, the court retaining jurisdiction of the cause for the sole purpose of determining the rights of the parties under plaintiff's second amended complaint. Subsequently, the cause was referred to a master in chancery who heard evidence and made a report recommending that a decree be entered finding the issues for the defendant and against the plaintiff. Her objections to the report were overruled and ordered to stand as exceptions. The chancellor overruled the exceptions and rendered a decree confirming the master's report. The decree found that at the time of the execution of the deed defendant did not fully understand the nature and effect of the conveyance; that plaintiff did not contribute anything from her own income toward the purchase and maintenance of the property; that, on the other hand, defendant furnished all the funds for its purchase and that when the sale was consummated he neither requested nor intended the title to be conveyed in joint tenancy. Accordingly, the decree adjudged that partition of the premises and the accounting of moneys

and other property sought by plaintiff be denied and that title to the premises was vested solely in defendant. A freehold being involved, plaintiff prosecutes this direct appeal, assailing the portion of the decree denying partition and an accounting. The decree for divorce is not challenged, and plaintiff has likewise elected to abide by the part of the decree denying to her an accounting of other funds and of personal property claimed to have been owned jointly with defendant.

The following facts appear from the pleadings and the evidence: Plaintiff and defendant were married in Italy in 1909. The next year, defendant came to this country and obtained employment. In 1912, he returned to Italy, and in the early part of 1913 brought his wife to Chicago where they lived together until November 9, 1935, when they separated. Six children were born to the couple, four of whom are living. The record discloses that plaintiff and defendant lived together in harmony and tranquility for more than twenty years. Defendant was industrious and from his arrival in Chicago until the beginning of the depression was steadily employed. From 1914 to 1930 he was employed by a sewer-construction company in the capacity of "bottom man" and sometimes, as foreman, had charge of construction gangs. His earnings averaged between $50 and $60 dollars weekly prior to 1920, and during the next ten years he earned a minimum of $300 per month. In addition, he frequently worked overtime, on Sundays and holidays, for which he received the prevailing union scale of wages. The requirements of boarders who lived at the home of defendant and plaintiff from time to time added to the latter's household duties. She named six men including, among others, her uncle and a brother of defendant, who resided at her home prior to July, 1923. They remained from six months to fourteen years and, according to her, paid amounts varying from three to fifteen dollars per month. She testified that she cooked for them, laundered their

clothes and mended their wearing apparel. From the testimony it appears the boarders sometimes paid her and, less frequently, the defendant. The latter testified that these boarders were his co-employees and that he told them to pay "whatever they can because they were to work with me and I was to furnish them the job;" that neither his brother nor plaintiff's uncle paid board, and that one of the remaining four named by plaintiff paid three dollars and another two dollars and fifty cents or three dollars per month. He stated he did not know what one of the other two paid, and did not testify with respect to the sixth.

Prior to July 12, 1923, plaintiff and defendant signed a contract with Moses Weinberg and his wife, by which they agreed to purchase a four-story brick building located at 1445 West Taylor street, Chicago, for $15,500, subject to a mortgage of $6500, and deposited $500 in cash as earnest money. The building contained one store, three six-room and four four-room apartments. Defendant retained attorney Guiseppe Zaffina to represent him in the transaction. The deal was closed on the day named at the downtown office of attorney Morris A. Weinberg who represented the vendors. Six persons were present, the sellers, the purchasers and the two attorneys. Attorney Zaffina recounted that on this occasion he explained to defendant and his wife the difference between deeds in joint tenancy and tenancy in common; that attorney Weinberg asked whether the warranty deed should be a joint tenancy deed; that defendant replied they wanted it to be in the name of himself and his wife, "so if the one dies the property remains to the other," and that thereupon attorney Weinberg prepared a warranty deed conveying the property to plaintiff and defendant not as tenants in common but as joint tenants, subject to the encumbrance of $6500, and explained the precise nature of the deed to them. The defendant paid $8500 to the sellers in order to close the deal. Of this sum defendant had accumulated $6500 and borrowed

$2000 from the brother who lived at his home. The mortgage indebtedness was later liquidated and the trust deed securing it released of record July 31, 1929. Attorney Zaffina testified further that when the deal was closed defendant directed attorney Weinberg to procure a fire insurance policy on the property which the latter ordered. Zaffina caused the deed to be recorded and delivered it and other papers to defendant.

Plaintiff's version of the circumstances attending the execution of the deed is substantially the same as narrated by attorney Zaffina. She added that in a conversation with defendant prior to repairing to attorney Weinberg's office he stated he would not permit her to go downtown on account of their children, declaring that irrespective of whether she accompanied him the property would be placed in both their names. Plaintiff testified that despite this assurance she protested, wanting "to see everything," and, apparently, not in vain. She stated that upon their return home defendant said: "You wanted to come up, you stubborn, if you didn't come it would be just the same." Subsequent to the purchase, plaintiff said that defendant told her she had a half-interest in the property and frequently complained she did not do enough work around the premises for her interest in the property. Defendant's account of the transaction is directly contrary to plaintiff's narration. He testified that he did not instruct any one to put his wife's name on the deed; that no one explained to him her name was placed on it, and that he did not know, even upon the trial, the meaning of the term "joint tenancy." Specifically, he said that attorney Zaffina made no explanation to him; that attorney Weinberg did not inquire whether he wanted the deed made out in joint tenancy, and that he first learned her name was on the deed shortly after their separation in November, 1935. He likewise denied the several statements attributed to him by plaintiff and attorney Zaffina.

The parties moved into the building and occupied one of the apartments. Both defendant and plaintiff leased the other apartments and collected rents, and the latter painted, cleaned, made such repairs from time to time as she could, and, in general, managed the building, because, according to her husband, he was "out busy working."

Additional facts and circumstances are disclosed by the evidence. In 1925, the parties purchased and operated a candy store for seven or eight months. Plaintiff worked in the store, being assisted by the two oldest daughters who joined her after school hours. From her testimony it appears that she and her husband disposed of this store because she was shortly to give birth to another child, the youngest of their four daughters. Beginning in 1928, and for about eighteen months thereafter, plaintiff again assisted with the operation of a cigarette and candy store. In 1932, the parties bought a third store. Plaintiff worked in each of these stores in addition to managing her household and caring for the children. She testified further that in 1932 she sold bedspreads, sheets and dresses. In particular, she testified that she sold more than thirty bedspreads in a year, receiving $40 each for them when her customers paid cash, and a larger sum when they paid in instalments.

Defendant turned over substantial portions of his wages to plaintiff, and with this money, the receipts from boarders, the rentals from tenants and additional sums she purchased food, clothes and other necessaries for the family. Taxes, assessments and repairs were also paid out of these funds. Defendant stated that he saved not only a part of his wages but also money which plaintiff gave back to him. The parties apparently operated largely on a cash basis and the savings, irrespective of their source, were deposited by one of them or their oldest daughter in bank accounts in the name of defendant.

Thomas Martino sold defendant and plaintiff a new fire insurance policy on the property made out in the names of both husband and wife as joint tenants. He stated that when he wrote the policy he asked defendant if the property belonged to both, and that defendant, as well as his wife, replied in the affirmative. Although defendant denied Martino's statement, he expressed the opinion that previous policies were in both names and that he ordered the policy from Martino to be written in the same manner as the previous policies.

A document dated January 13, 1936, purporting to be defendant's verified answer to plaintiff's original complaint and bearing his signature was admitted in evidence as one of her exhibits. An excerpt reads: "Defendant further answering shows and charges that the property now recorded in the name of this defendant and plaintiff in joint tenancy was merely placed same in said manner for convenience." Defendant now replies that he did not know and could not understand the nature of the foregoing quotation.

To obtain a reversal, plaintiff contends that the controverted portion of the decree is against the manifest weight of the evidence. She invokes the familiar rule that when property is taken in the joint names of husband and wife and the consideration is furnished by one of them, there is a presumption of a gift from the one furnishing the consideration to the other. (*Walker* v. *Walker*, 369 Ill. 627; *Kartun* v. *Kartun*, 347 id. 510; *Link* v. *Emerich*, 346 id. 238.) This presumption of fact, as defendant insists, is not conclusive but may be rebutted by proof, and whether a resulting trust arises in such a case is purely a question of intention. (*Kartun* v. *Kartun, supra; Link* v. *Emerich, supra.*) A resulting trust arises, if at all, the instant the legal title is taken and the title vests. (*Link* v. *Emerich, supra; Lord* v. *Reed*, 254 Ill. 350.) The burden of proof is upon the party seeking to establish the trust, and the evidence, to be effective for such purpose, must be clear,

convincing, unequivocal and unmistakable, and if doubtful or capable of reasonable explanation upon any theory other than the existence of a trust it is insufficient. (*Kartun* v. *Kartun, supra; Link* v. *Emerich, supra; Wies* v. *O'Harow,* 337 Ill. 267; *Tritchler* v. *Anderson,* 334 id. 211; *Dodge* v. *Thomas,* 266 id. 76.) "The presumption of gift," as pointedly observed in an analogous case, "is not to be frittered away by mere refinement." *Kartun* v. *Kartun, supra.*

It may be conceded the evidence tends to show that substantially all the funds used to purchase the property in 1923, and, thereafter, to satisfy the mortgage indebtedness came from defendant's earnings. At the same time the record proclaims that plaintiff's industry and resourcefulness contributed in no small measure to her husband's successful efforts to accumulate sufficient money to attain these ends. Her contribution in actual money may have been negligible but it was none the less real. Under the circumstances disclosed by the record it is patent that plaintiff contributed her time and efforts through a period of ten years prior to the acquisition of the property to the manifold duties attendant upon successful management of an increasingly large household and keeping boarders and, when, as the years passed, her four daughters required less time and attention, to outside ventures such as the three confectionery stores successively owned and operated by the parties and, later still, during the depression, to the sale of household articles. The actual amount of money or the pecuniary value of the services rendering possible the purchase of the building which may be directly attributed to plaintiff is of little moment. Admittedly, the relations of the parties during a prolonged period of their marriage were entirely harmonious and free from the discord which many years later was to disrupt their home. The determination of whether defendant intended the title to the property acquired should be placed in the names of himself and his wife in joint tenancy or solely in his own name

must be made in the light of the happy relationship which obtained in 1923 rather than in the light of the mutual hostility evident in November, 1935, and afterwards. His intent in 1923 controls—not his intent in 1935, even if justified by plaintiff's desertion. Tested in this way, the evidence leaves no doubt but defendant intended the property to be placed in joint tenancy so that, as he had been carefully and adequately advised by counsel, in the event of his demise the property would vest absolutely in his wife, without resort to probate proceedings and, conversely, if she predeceased him, he would then have clear title to the property.

The evidence to the effect that a gift to plaintiff was not intended consists principally in defendant's uncorroborated assertions such as his repeated professions of ignorance of the nature and effect of a joint tenancy conveyance. If defendant could not read the deed which he now assails a duty rested upon him to procure some reliable person to read and explain it to him. Even if then actually unable to read and write English his defense, nevertheless, cannot avail him, as one who is unable to read is not permitted to make contracts without the usual precaution to ascertain what they mean. (12 American Jurisprudence, "Contracts," sec. 137; *Shulman* v. *Moser*, 284 Ill. 134.) Moreover, evidence even tending to demonstrate he did not intend a gift to his wife nor why he did not intend to make a gift to her is wanting. He did not plead or attempt to prove fraud or misrepresentation in any degree incident to the transaction itself which resulted in the questioned deed. Nor did he deny that the contract for the purchase of the property was signed by his wife as well as himself, and the evidence previously set forth, apart from his own testimony, discloses that he requested and intended the title to be taken jointly in the names of himself and his wife. His belated protestations of lack of knowledge of his wife's joint interest in the property are, to say the least, unim-

pressive and do not square with his intelligent comprehension of other matters, nor with the fact that insurance policies on the property were written in the names of both plaintiff and defendant, and certainly not with his sworn answer to the original complaint averring that the property was placed in joint tenancy as a matter of convenience. No reason is suggested why attorneys Zaffina and Weinberg should have included plaintiff's name in the deed without a specific direction or authority so to do. The conclusion is irresistible that such authority was expressly and understandingly granted. Title here has stood in joint tenancy a long time. In the absence of evidence of most convincing character a change in the title will not be ordered. (*Banning* v. *Patterson*, 363 Ill. 464.) Nearly a century ago, in *Reeve* v. *Strawn*, 14 Ill. 94, this court well said: "Before we transfer the title to real estate upon the strength of parol testimony alone, the facts upon which such change is asked should be so convincing as to leave no reasonable doubt in the mind of the court, and not, as in this case, consist of ambiguous expressions and uncertain declarations made by the party sought to be charged, and testified to by witnesses after the lapse of several years."

When all the facts and circumstances are considered it cannot be said that defendant has met his burden of rebutting the presumption of a gift of a joint tenancy interest in the property to plaintiff by testimony of a convincing character, and she is, therefore, entitled to partition.

The decree of the superior court is reversed and the cause is remanded to that court, with directions to enter a decree in accordance with this opinion.

*Reversed and remanded, with directions.*