## ADAIR v. SHALLENBERGER et al.

### No. 7489.

Circuit Court of Appeals, Seventh Circuit.

May 26, 1941.

Rehearing Denied June 16, 1941.

Harry Dale Morgan and Donald A. Morgan, both of Peoria, Ill., for appellants.

Frederic A. Fischel, of Chicago, Ill., and Arthur D. Young, of Lewistown, Ill., for appellee.

Before MAJOR and KERNER, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Defendants, husband and wife, appeal from a decree cancelling a deed by the wife to the husband because the court found it was made with intent to defraud creditors of the grantor.

Plaintiff is receiver of the First National Bank of Canton, Illinois, closed March 4, 1933, and never reopened. The Comptroller declared the association insolvent and, on March 20, 1934 notified its shareholders, of whom Mrs. Shallenberger was one, that, inasmuch as it was necessary to enforce their statutory liabilities, he had made an assessment of 100 per cent, and requested payment. Though Mrs. Shallenberger denied receiving the notice, the evidence is clear that it was sent to her by registered mail and receipted for by her on March 28, 1934. Some eighteen days later, on April 16, consulting counsel, she executed the deed to her husband and recorded it. Thereafter she had no property other than, as she claims, the demand against her husband herein later mentioned. She paid no part of the assessment, but, some four months later, on August 1, 1934, wrote the Comptroller, in "reply to the notice," that she was unable to pay and had no property and no earning power, in the face of the fact that, in the transaction of April 16, she had, if her testimony is to be believed, entered into a contract with her husband whereby he was to pay her $500, $25 monthly, beginning May 1, 1934, in satisfaction of an alleged debt twenty-nine years old, which, with unpaid interest, amounted to approximately plaintiff's unsatisfied demand.

The receiver, meeting with no success upon his request for payment, sued the wife and obtained judgment. Execution was returned unsatisfied on March 28, 1939. Thereupon the receiver instituted this suit to set aside the deed upon the ground that, under the statute of Illinois, it was void as a transfer intended to delay, hinder or defraud creditors. Chap. 59, Ill.Rev.Stat.1939, Section 4. Answering, defendants denied that the conveyance was made with the intent charged and asserted that it was executed "for a good, sufficient and valuable consideration paid by" the husband to the wife.

Defendants testified that in 1905 the property was purchased for $2,500, the wife furnishing $500, the husband, $2,000, and thereupon conveyed to the wife, it being agreed that the title should remain in her name until the husband could reimburse her. The husband, a practicing physician during the intervening years, never paid any part of the principal or interest until after she conveyed to him, though such liquidated demands bear interest in Illinois.

The court found that the testimony "tending to show" that the wife had "held such real estate in trust for the payment of $500 advanced by her in 1905 is * * * of no force and effect, because no effort was made from 1905 until the year 1934 to deed said property to Shallenberger nor was the deed ever made, delivered or recorded until Mrs. Shallenberger had received notice of assessment"; that the wife had retained title without interference, protest or objection from her husband for more than twenty-nine years; that a conveyance was never requested by the husband or suggested by the wife until after the latter had received notice of assessment; that, because she knew or had reasonable ground to know that judgment would be obtained unless the assessment was paid and because of other facts appearing in the record, the reasonable inference from the evidence was that the parties had evinced an intention that the property be that of the wife; that no trust existed and that the transfer from the wife to the husband was made to defeat her creditors.

It is apparent the court believed that defendants had not been truthful. It found the wife disputed by incontrovertible evidence as to her alleged lack of knowledge of the assessment. It was confronted by the unreasonableness of the testimony of the husband, who, though his office was within a short distance from the bank, testified he did not know why the latter was closed, that it was solvent or that his wife was liable upon the assessment, notwithstanding that he had written for his wife to the Comptroller, in response to the notice of assessment, saying she had no property and no means of payment. He had, prior to the assessment, paid his wife no part of the alleged debt or interest thereon. She had made no request for payment; he had demanded no conveyance. His claim of title, twenty-nine years old, came to life only when the Comptroller demanded she pay her debt. The wife had written that she had no property when, upon her own statement, her husband owed her $500; indeed, the sum due was in excess of $1,200. These and other circumstances appearing in and about the testimony of the two witnesses the court had a right to consider in determining their credibility. It seems obvious that, having observed them upon the witness stand, and having concluded that they had testified falsely in certain material respects, it relied upon the rule that a witness once impeached by incontrovertible evidence may be misbelieved in the entirety of his testimony. In such situation courts of review will not interfere with the finding of the trial court, who had full opportunity to observe the witnesses and all surrounding circumstances affecting their credibility.

After the court had made the findings mentioned, defendants filed a motion for others, which the court denied. Thereafter defendants renewed the motion for additional findings, some of which, without further argument or hearing, were adopted, including one in which the court found that at the time of the purchase in 1905, the husband and wife had agreed that the title should be taken in the latter's name to secure the money advanced by her. Defendants insist that this finding, thus brought into the record subsequent to the court's original adjudication, is inconsistent with the latter and invalidates the decree. But, upon analysis, it is apparent that the court found by the last mentioned finding merely that the property was originally conveyed to her to secure $500; in other words, that the deed was intended to, and in law did, amount to a mortgage. Such a contract could, under no possible construction of the facts, bring into existence either an express trust or a resulting trust. Thus, the court, had originally, in addition, said that testimony to the effect that the property was held to secure $500 was given "no force" because no effort was made for twenty-nine years to convey the property to the husband, and pointed out that because of the long delay, because no rights growing out of a trust had ever been exercised, demanded or contemplated and because the wife knew or had reasonable grounds to know that judgment would be obtained against her unless she paid the assessment, it was only reasonable to infer that the parties had ultimately intended the title to be that of the wife; that no trust in fact existed; that the property was hers and that when the wife conveyed to the husband she did so in fraud of her own creditors. This, eventually, is the rationale of the decision and in its face any apparent inconstancy fades into legal insignificance against the court's obvious conviction that title in fee simple, lodged in the wife for twenty-nine years, whatever the original agreement, had, by consent and agreement of the parties, been retained by her as a gift. By their concerted action over this extended period the parties had substituted for any original

agreement to the contrary, an absolute gift to the wife. This was in accord with Illinois decisions. Tritchler v. Anderson, 334 Ill. 211, 165 N.E. 641; Kartun v. Kartun, 347 Ill. 510, 180 N.E. 423; Spina v. Spina, 372 Ill. 50, 22 N.E.2d 687. Where the purchaser is a married person, title taken in the name of the spouse is presumed, in the absence of testimony to the contrary, to be a gift from the one to the other, whoever may have furnished the consideration. Under the circumstances in proof the court indulged this presumption, and believed the subsequent actions of the parties consistent with and sufficient to confirm it. "Where there is a general denial of fraud or ownership by witnesses, such denial is of little effect, if the facts and circumstances narrated by the witnesses disclose the contrary. For example, if a man swears that he had no intent to defraud his creditors by a conveyance, but the facts testified to by him show that the conveyance was a voluntary conveyance to his wife without consideration, while he was insolvent, or largely indebted, or on the eve of insolvency, such facts so testified to by him will stamp the conveyance as fraudulent, even though he may have had no actual intention to defraud." Hauk v. Van Ingen, 196 Ill. 20, 36, 63 N.E. 705, 710.

In this connection the court rightfully considered the laches of defendants. When facts grow old, sources of evidence to establish true situations are lacking. Legal titles will not be disturbed after long lapse of time, where parties, with full knowledge of the facts, make no effort to assert their rights, for equity does not encourage stale claims. Unreasonable delay bars relief; it may not be relied upon to defeat meritorious claims. Orear v. Farmers' State Bank & Trust Co., 286 Ill. 454, 122 N.E. 63; Moore v. Taylor, 251 Ill. 468, 96 N.E. 229; Smith v. Willard, 174 Ill. 538, 51 N.E. 835, 66 Am.St.Rep. 313. The evidence clearly justified the chancellor's holding that by delay in asserting his right the husband now claiming it against his wife's creditors was barred by his laches and that the testimony of each and their subsequent conduct evinced a positive intent to give her the property. Lutyens v. Ahlrich, 308 Ill. 11, 139 N.E. 50.

We do not understand that to be effective laches always requires proof of immediate actual damage to the party who asserts it. It embraces some of the elements of estoppel, but may emanate solely from the inequity arising from encouragement of stale demands, which have rested for a long time in undisturbed slumber, when to encourage them works defeat of meritorious claims. And it may be so strong, when coupled with undisputed conduct, as to establish positive basis for an affirmative finding of facts consistent with its implications.

We find no justification for interference.

The decree is affirmed.