DETROIT, BAY CITY & WESTERN RAILROAD CO. *v.* LAVELL.

1. BILLS AND NOTES—CONDITIONAL PROMISE TO PAY—VALIDITY.

An undertaking in writing by which a farmer promised to pay to a railroad company a certain sum of money, conditioned upon its extending its railroad to a certain point by a certain time, while not technically a promissory note because based upon a future contingency which might or might not eventuate, was nevertheless, in its inception, a legal, binding, present promise enforceable when the conditions specified had been fulfilled.

2. FRAUDULENT CONVEYANCES—CONDITIONAL CLAIM UNDER STATUTE.

A conditional claim, based on performance, is as much under the statute against fraudulent conveyances (3 Comp. Laws 1915, § 11998) from the outset as a claim which is from its inception certain and absolute, since it runs back to the beginning of the conditional or contingent right.

3. SAME — GRATUITOUS DEEDS VOID — FRAUDULENT INTENT NOT NECESSARY.

Gratuitous deeds putting the title of a husband's farm in himself and wife as tenants by the entirety, which had the effect of hindering and delaying the collection of a claim against the husband, were fraudulent under the

On question of transactions between husband and wife as fraud on creditors, see note in 32 L. R. A. 67.

statute, although no fraudulent intent was in fact entertained.

Appeal from Sanilac; Beach (Watson), J. Submitted June 5, 1923. (Docket No. 12.) Decided October 1, 1923.

Bill in aid of execution by the Detroit, Bay City & Western Railroad Company against James Lavell and another. From a decree dismissing the bill, plaintiff appeals. Reversed, and decree entered for plaintiff.

*Charles F. Gates,* for plaintiff.

*Fred A. Farr* and *R. W. McKenzie,* for defendants.

STEERE, J.   Plaintiff is a railroad corporation, duly organized, owning and operating a railroad line from Bay City to Port Huron, Michigan, passing through the villages of Peck and Roseburg in Sanilac county. Defendants are husband and wife living on their farm near Roseburg.

Before plaintiff's road was built to Roseburg defendant James Lavell gave it the •following conditional promise to pay which was accepted and complied with by plaintiff within the time prescribed:

"Roseburg, Michigan, Dec. 9, 1912.
"In consideration of the · extension of the Detroit, Bay City & Western R. R. from Peck,. Sanilac county, to Roseburg, Sanilac county, Michigan, I hereby agree to pay to the Detroit, Bay City & Western Railroad Company, the sum of $160, at Yale State Bank, one-half of this amount payable when first train reaches Roseburg, the remaining one-half one year thereafter. If above mentioned road is not constructed by December 31, 1916, then this agreement is null and void.
(Signed)   "JAMES LAVELL."

Proceeding with its construction in good faith plaintiff completed the extension of its road from Peck to Roseburg before the specified time, the first train over

it reaching Roseburg on July 16, 1916, and the completed line between those two points was open for operation early in August of that year. Since that time it has run its trains regularly between Bay City and Port Huron, passing through Peck and Roseburg.

At the time of signing this note defendant James Lavell owned in fee simple a good and unincumbered farm of 80 acres located near Roseburg admittedly worth $8,000, having upon it farm buildings, live stock, agricultural implements, etc., adequate for its successful operation. On December 12, 1913, defendants made a quitclaim deed of this farm to an acquaintance named Anna McNulty for a recited consideration of one dollar, but admittedly without any consideration, and as a part of the same transaction she immediately thereafter gave back to defendants as husband and wife a quitclaim deed purporting to convey the farm to them as tenants by entirety.

Defendants allege in their answer and claimed upon the hearing that the only object of the execution and delivery of the two deeds was to put the record title of the property in such shape as to insure the legal ownership and possession of the whole to defendant Mary Lavell if she survived her husband who then was and remains as they claim in poor health.

After plaintiff's railroad was completed and put in operation defendant James Lavell neglected and refused to pay the $160 as he had agreed in his undertaking of December 9, 1912, and action was finally commenced by plaintiff in a justice's court of Sanilac county to recover the same, with process personally served. Judgment was obtained against him for the sum promised, amounting, with interest after it fell due, to $173, with costs taxed at $10. A transcript of judgment was thereafter filed and levy made upon said farm, title to which then stood upon the records in the names of defendants as tenants by entirety.

The judgment not being satisfied this bill was filed in aid of execution asking that defendants be required to pay said judgment and in default thereof the two pretended deeds of transfer between them and Anna McNulty be set aside and the sheriff authorized to sell under his levy.   The trial court was of opinion that previous to the completion of the road in 1916 the obligation sued upon was not binding, because unilateral, not to be performed within one year, at the time of giving the two deeds it had not been accepted or acted upon, was void for lack of mutuality, and no indebtedness existed by reason of it at the time they were given, and therefore dismissed the bill.

The undertaking in writing which Lavell gave plaintiff on December 9, 1912, was not technically a promissory note because the promise was based upon a future contingency which might or might not eventuate, but it was in its inception a legal, binding, present promise enforceable when the conditions specified had been fulfilled.   They were fully complied with both as to performance and time.   Under such a state of facts no distinction obtains between absolute and conditional promises in application of the statute against fraudulent conveyances.   A conditional claim based on performance is as much under protection of the statute from the outset as a claim which is from its inception certain and absolute.   It "runs back, under the statute against fraudulent conveyances, to the beginning of the conditional or contingent right."   Bigelow on Fraudulent Conveyances (Rev. Ed.), p. 169, § 3.

Our statute relating to fraudulent conveyances renders void those "made with intent to hinder, delay or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts or demands," etc. 3 Comp. Laws 1915, § 11998.   If valid, the deeds in question here not only hinder and delay but absolutely

defeat plaintiff's demand judicially determined as to liability and amount.

It is urged in defense that the burden of proving intent to defraud rests on plaintiff; that no such intent is shown or was in fact entertained, the sole purpose being to protect the interests of the wife in case she survived her husband whose precarious health gave rise to the thought.    No sudden change in the condition of his health at that time is shown; he thereafter continued in possession and operation of his farm as before and is yet alive.    On cross-examination he said of the situation:

"When the deeds in question were made I had the farm equipment, I don't know whether I was in the best of health, but could do such work on the road that the commissioners would allow me a full day for."

The conveyances which on the records put this property beyond the reach of creditors were concededly without consideration, voluntarily and gratuitously made, as defendants claim to protect the wife, a course only open to question when it deprives creditors of their rights.    Incidentally the deeds would operate to render the husband execution proof as to the farm during her life, and if he survived her would give him a clear title to the whole of it.    An equitable maxim for test of voluntary conveyances given without consideration is that "A man should be just before he is generous."    Touching that thought this court said, speaking through Chief Justice Campbell, in *Fellows* v. *Smith,* 40 Mich. 689:

"Where a conveyance from a husband to a wife is a voluntary one, without valuable consideration, it is void in law as against creditors, because it transfers property they could have reached had no such transfer been made.    An actual, fraudulent design is not necessary to defeat a voluntary conveyance as against existing creditors."

In *Schaible* v. *Ardner,* 98 Mich. 70, involving a gra-

tuitous deed from father to son, this court said upon the subject: "

"A party is presumed to intend the natural and necessary consequences of his own acts, and, when prejudice to the rights of creditors results, the act is constructively fraudulent, notwithstanding good motive or intentions. *Winchester* v. *Charter,* 97 Mass. 140; *Potter* v. *McDowell,* 31 Mo. 62; *Farrow* v. *Hayes,* 51 Md. 498; *Allan* v. *McTavish,* 8 Ont. App. 440; *Phelps* v. *Curts,* 80 Ill. 112; *Bank* v. *Wheaton,* 8 Me. 381; *Roberts* v. *Radcliff,* 35 Kan. 502; *Babcock* v. *Eckler,* 24 N. Y. 632; *Morrill* v. *Kilner,* 113 Ill. 318; *Bohannon* v. *Combs,* 79 Mo. 305. The conveyance being voluntary, it is immaterial whether or not the son participated in the design. *Matson* v. *Belchor,* 42 Mich. 477; *Reeves* v. *Sherwood,* 45 'Ark. 520. * * *

"It is insisted that defendant was not at the time of the conveyance a creditor, within the meaning of the statute (2 How. Stat. § 6203). The statute protects not alone 'creditors' strictly speaking, but 'other persons, of their lawful suits, damages, forfeitures, debts, or demands.' "

So far as equitable considerations are concerned, preliminary work looking to extending the line between Peck and Roseburg, in the shape of surveys, maps, tracings, etc., afterwards used in actual construction, had been done when Lavell signed the agreement of December 9, 1912, with knowledge of anticipated difficulties and delays, for in his conditional promise to pay he gave plaintiff time until December 31, 1916, in which to perform. He had the benefit of the railroad for transportation of his crops to market a year before plaintiff promised it to him, which continues to the present time. On July 5, 1916, the president of defendant's road notified him about when it would be completed and open to Roseburg, asking him in substance to be ready to fulfill according to his promise when the road complied with the conditions he had imposed, saying:

"We also expect to be in a position to handle your crops this season and the saving of your former long haul to market will be overcome by giving you an opportunity to load on our rails in close proximity to your farm."

So far as shown he paid no attention to this courteous communication and others more insistent which followed, including a summons from justice's court after the full amount of his indebtedness fell due, apparently resting content under the theory that his affairs were safely adjusted for the final defense of immunity from execution.

The decree appealed from will be set aside, and the relief asked by plaintiff granted, with costs.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.