(No. 24712.—

JOHN W. WALKER, Appellee, *vs.* MARIE L. WALKER, Appellant.

*Opinion filed October 17, 1938—Rehearing denied Dec. 8, 1938.*

RAMLOSE & EDWARDS, (WEIGHTSTILL WOODS, of counsel,) for appellant.

COBURN & COBURN, (LOUIS T. HERZON, of counsel,) for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiff, John W. Walker, (appellee here,) brought this suit in the circuit court of Cook county against his wife, Marie L. Walker, appellant, asking partition of certain described real estate appearing of record in the names of plaintiff and defendant as joint tenants. In the second count of his complaint plaintiff alleged that this real estate and certain securities in the possession of defendant were purchased with his funds, and asked that the court find plaintiff to be sole owner of the securities and real estate, subject to the inchoate right of dower of defendant. In her counter-claim defendant alleged the securities and the real estate were purchased with her funds and prayed that she be decreed sole owner of them, subject to plaintiff's inchoate right of dower in the realty. The cause was referred to a master in chancery, who reported his findings of fact and conclusions of law. The chancellor entered a decree confirming the master's report, providing for an equal partition and division of the real estate and securities. Defendant appealed to the Appellate Court for the First District, which ordered the cause transferred to this court for the reason that a freehold is involved.

Appellee, a widower seventy-six years of age at the time this action was begun, and appellant, a widow fifty-eight years of age, were married July 17, 1919. They lived together until May 2, 1937, at which time they separated. Since then they have lived separate and apart. Appellee

was employed as a railway conductor for forty-seven years; in 1933 he became eligible for a pension and retired. From 1907 until the time of her marriage to appellee, appellant was employed as a nurse, earning from $85 to $90 per month and maintenance. She was not gainfully employed after the marriage.

At the time of the marriage appellee owned a house at 1044 Euclid avenue, Oak Park, Illinois, household furniture valued at $900, and an automobile. The Euclid avenue property is still in his name. Appellant owned a three-flat frame building at 2259 Kirkland avenue, Chicago, which is still in her name. She also owned various securities aggregating about $13,000, and had a personal savings account in the Lawndale National Bank, which she still maintains. Appellee testified he earned between $225 and $250 a month, payable semi-monthly; that every two weeks he would cash his pay check, retain from $12 to $18 to cover his expenses, and give the balance to appellant; that he bought his last suit of clothes fourteen or fifteen years ago; that the property in question was purchased partly with the money he gave appellant and partly with her own money. Appellant testified that appellee earned not more than $180 per month and that he gave her only $25 per week, out of which she paid family expenses, taxes, special assessments, etc. She testified that the securities were purchased at the Suburban Trust and Savings Bank with her money which she had secreted in a bedpost, in a trunk, and in a box at the Lawndale National Bank; that she, alone, was present at the time of the purchases; that she made the purchases in the joint names of appellee and herself because she wanted appellee to have the property when she died, without the necessity of probating, but that she wanted full control and management while she lived. It appears from the testimony of officials of the bank that appellant usually came to the bank, deposited money and purchased the securities, alone. Appellee explains this by saying that his duties as

a conductor required him to be out of town about four days a week. Officials of the bank testified appellant told them the money was hers, but they also testified she told them she and her husband wanted the bank account and securities placed in joint tenancy. They did not testify that she used the term joint tenancy in other than its full legal meaning. The parties owned in their joint names a mortgage on the real estate in question and took a deed to it in lieu of foreclosure. The deed was executed to them as joint tenants. According to the testimony of attorney George A. Edwards, a witness for appellant, he explained to her that joint tenancy gives ownership to both parties during their lifetime with the right of survivorship and she said she still wanted it done that way and was satisfied as to the title.

The master found that appellee was of a frugal nature and spent from $15 to $18 every two weeks; that he turned over the balance of his earnings to appellant, the exact amounts thereof being unknown but substantial; that the securities were purchased with money pooled by the parties; that even though appellant may have contributed a greater portion than appellee, it is immaterial, because when property appears in the joint names of husband and wife a gift from the one to the other will be presumed; that no party established, by a preponderance of the evidence, that one, rather than the other, was entitled to exclusive ownership of the property purchased since the marriage, and that other evidence indicates the creation of a joint estate, separate and apart from the individual separate holdings.

Appellant's first contention is that the chancellor had no authority to enter a decree providing for a division of the securities, inasmuch as the complaint asked that appellee be decreed sole owner. To sustain this contention appellant relies chiefly on *Fineman v. Goldberg,* 329 Ill. 507. In that case we announced the familiar rule that a

plaintiff is not entitled to relief, although the evidence establishes a clear right to it, unless there are averments in the complaint to support the case made by the evidence. We there held that under an allegation that plaintiff was entitled to fifty per cent of the net profits of the partnership, a decree could not be entered awarding him fifty per cent of the partnership assets. This was because the rights of the parties to the assets were not put in issue by the pleadings. Here, however, the complaint alleged appellee was sole owner of the property, and in her counter-claim appellant set up that she was sole owner. Thus the question of the ownership of the property was clearly put in issue, and the chancellor was warranted in adjudicating the rights of the parties in the property.

When property is taken in the joint names of husband and wife and the consideration is furnished by one of them, there is a presumption of a gift from the one furnishing the consideration to the other. (*Partridge* v. *Berliner,* 325 Ill. 253; *Osborne* v. *Osborne,* id. 229; *Kartun* v. *Kartun,* 347 Ill. 510; *Link* v. *Emrich,* 346 id. 238; *Erwin* v. *Felter,* 283 id. 36.) Clear and convincing evidence is required to overcome the presumption of a gift and to establish a resulting trust. (*Link* v. *Emrich, supra.*) Appellant claims sufficient evidence was introduced to overcome the presumption and to show that appellant is sole owner of the property. In support of this claim appellant argues that she paid the greater portion of the money, and that she conducted the transactions herself, collected interest on the securities, and retained possession of the securities, the bank book and the deed to the real estate. It can be conceded that she did pay most of the money out of her own funds. However, after a careful consideration of the evidence, we are unable to say that the master was not warranted in finding that appellee contributed substantial amounts toward the purchase prices. Under such circumstances it is immaterial that appellant may have paid a greater portion than

appellee did. The presumption of a gift from the wife to the husband when property is taken in their joint names is here strengthened by the fact that the property was purchased with the money of both parties and not with that of the wife alone. Appellant further claims the presumption of a gift is weaker when the wife furnishes the consideration, citing *Wright* v. *Wright,* 242 Ill. 71. That principle has no application here, for in this cause the consideration was furnished by both parties.

Conduct of the parties may be considered in determining their intention. (*Byerly* v. *Byerly,* 363 Ill. 517.) Appellant asserts their conduct shows she was the sole owner, and emphasizes the fact that she conducted the transactions and retained possession of the securities, bank book and real estate deed. On the other hand, appellee points out that his duties required him to be out of town about half the time, that his wife was a good business woman and that he trusted and relied on her. He also testified that he went with her to the bank occasionally and "kind of memorized" what was in the safety deposit box, to which he had a key at all times. It is also to be observed that after the marriage appellant continued her separate account in the Lawndale National Bank, continued to hold the Kirkland avenue property in her own name, and that appellee retained the Euclid avenue property in his own name. These circumstances tend to show that the property which was taken in joint tenancy after the marriage was intended to be jointly owned by them. *Partridge* v. *Berliner, supra.*

Appellant stresses her testimony that she wanted full ownership and management of the property during her lifetime and merely intended that appellee should have the property on her death without the trouble and expense of probating. This testimony is uncorroborated. The testimony of the bank officials was only that the money used in the purchase of the securities, according to appellant, was her money. Attorney Edwards explained the meaning of

joint tenancy at the time the real estate was conveyed to the parties, and she said she was satisfied and still wanted it done that way. When, knowing the meaning of joint tenancy, she took the deed and continued to purchase securities in their joint names without placing a restricted meaning on the term, she cannot now be heard to say she did not intend to create a joint tenancy.

From a consideration of the entire record we are of the opinion that the chancellor was correct in holding appellant and appellee were joint tenants and in ordering an equal division of the property.

The decree is affirmed.

*Decree affirmed.*