VONVILLE ET UX *v.* DEXTER, TRUSTEE

[No. 17,690. Filed January 29, 1948. Rehearing denied March 5, 1948. Transfer denied April 5, 1948.]

188

*McKisson & Kiser*, of Plymouth, attorneys for appellants.

*Tinkham and Tinkham, and John F. Beckman, Jr.,* of Hammond, *Barnes, Hickam, Pantzer, & Boyd,* of Indianapolis, attorneys for appellees.

ROYSE, J.—This appeal raises the question of whether a trustee in bankruptcy is entitled to the interest of a bankrupt husband in real estate owned as tenants by entireties. (Hereinafter when the term "appellee" is used it will refer to appellee Dexter. The appellants will be referred to individually as husband and wife.)

The facts out of which this action arose, as shown by the record, may be summarized as follows: Appellants were married in 1923. At the time of their marriage the wife had $1,000 of her own money. She applied this money to the purchase of a home in Illinois. Title to this property was taken in the name of husband and wife as joint tenants. There was a mortgage on the property. About a year and a half later this property was sold at a profit of about $1,000. At about the time of this sale the husband entered the contracting business building homes, etc. The proceeds from the sale of the first property were invested in another piece of real estate, title in both as joint tenants. The husband built a home on it. There was a mortgage on this property. Sometime prior to 1930 this property was sold and the proceeds from this sale invested in property in Calumet City, Illinois, title again in both as joint tenants, the husband, in 1930 or 1931, building a home on this real estate in which appellants lived for

about ten or eleven years. While the husband was engaged in building the houses the earnings of the wife supported the family.

In 1932 the husband and another not involved in this action entered into a contract with the United States Government for the extension and remodeling of the U. S. Post Office in Joliet, Illinois. On or about July 15, 1932, The Fidelity & Deposit Company of Maryland as surety executed its contract bond in the sum of $50,000, conditioned that the husband and his associate would faithfully perform said contract. The application for the bond was signed by the husband and carried the usual indemnifying provision. In August of 1933 the husband and his associate abandoned their contract and the Bonding Company completed the work.

About 1926 the wife had to go to work because the earnings from the business of the husband were not sufficient to support them. From 1932 to 1937 the husband could not find any work because of the depression. The wife worked regularly and earned from $125 to $140 per month. Out of her earnings she made the payments on the mortgage on their home, paid the taxes, grocery, utility and other household expenses. It is undisputed that if it had not been for her contributions the home in Calumet City would have been lost.

About 1940, the record discloses the property in Calumet City was sold. There was a mortgage of between $5,500 and $6,000 on this property at the time of the sale. The sale price was $7,500. With the net proceeds from this sale the wife purchased an apartment in Hammond, Indiana. Title was taken in the name of husband and wife as tenants by entireties. There was a $6,500 mortgage on this property. During the time they lived in this property the wife made the payments on the mortgage. They kept this property for about

one and one-half to two years. It was sold for $12,000. At the time of the sale the mortgage had been reduced to about $6,000. The wife received the net proceeds from this sale. The husband explained this by saying she had made all the payments, etc., and he never had anything to do with her money. In July of 1942, with the proceeds from this sale, she bought the farm in Marshall County which is the subject of this action. Title to this farm is in appellants as tenants by entireties. The farm is subject to a mortgage in excess of $3,000.

Early in 1945, the Fidelity & Deposit Company of Maryland brought its action in the United States District Court for the Northern District of Indiana against appellants and others for $27,500 for money and interest thereon expended by it by reason of the failure of the husband to fulfill his contract with the government. The United States District Court made its special finding of facts and found in favor of the wife and that the husband was indebted to the Bonding Company in the sum of $11,036.37 with interest from the 30th day of March, 1936. (From this it may be inferred the debt accrued on said date.) Judgment was entered in favor of the wife and against the husband for $16,929.78. In August, 1945, the husband filed his voluntary petition in bankruptcy. The appellee was appointed trustee. The judgment in favor of the Fidelity & Deposit Company was filed as a claim in said matter.

Thereafter, appellee brought this action asserting he became the owner of right, title and interest of the husband in the farm. Upon proper request the trial court made a special finding of facts and stated its conclusions of law thereon. The only finding which is materially different from the facts as hereinbefore set out is finding No. 4, which is as follows:

"That the said defendants, George E. Vonville and Margaret Vonville, each contributed approximately equal sums of the purchase of said farm, said George E. Vonville contributing thereto his own funds in the approximate sum of $1,500.00; that at the time of said purchase and conveyance, the defendant George E. Vonville was indebted to the Fidelity Deposit Company of Maryland, a corporation, in the sum of $11,036.37, with interest thereon at the rate of 6 per cent per annum from the 30th day of March, 1936, which indebtedness was later reduced to judgment as above described; that at the time of said conveyance and continuously ever since, the defendant, George E. Vonville, had no other property subject to execution out of which the claim of the Fidelity and Deposit Company of Maryland, a corporation, could or can be collected.".

The trial court's conclusions of law were as follows:

"1. That the law is with the plaintiff and the defendants Aetna Life Insurance Company and against the defendants, George E. Vonville and Margaret Vonville; that the plaintiff is entitled to the partition and sale of the following described real estate in the County of Marshall and State of Indiana: (H. I.), in accordance with the laws of the State of Indiana in such cases made and provided.

"2. That the parties hereto are entitled to participate in the proceeds of such sale, and the proceeds of said sale shall be distributed in the following order and manner:

*First:* To the payment of the costs of this action and of the sale of said real estate;

*Second:* $3,215.11 together with interest thereon at the rate of 5½ per cent per annum from August 1, 1945, until paid, plus $250.00 as attorneys' fees to the defendant Aetna Life Insurance Company in full payment and satisfaction of its mortgage on said real estate;

*Third:* The balance to be divided equally between the plaintiff, Galeman Dexter, as Trus-

tee in Bankruptcy of the Estate of George E. Vonville, and the defendant, Margaret Vonville."

Judgment accordingly.

The errors assigned here and not waived are, that the trial court erred in overruling appellants' demurrer to the complaint, in overruling their motion for judgment on the pleadings, their motion for a new trial, and in each of its conclusions of law. The specifications in the motion for a new trial question the sufficiency of the evidence, the legality of the decision, and error in the admission of certain evidence.

Before the rendition of judgment or the filing of the motion for new trial, and after the court announced its special finding of facts and conclusions of law, appellants separately and severally moved the trial court for a judgment in their favor on the pleadings notwithstanding the findings of the court, for the reason the complaint does not state a cause of action against either of appellants. Appellee contends this was a motion in arrest of judgment which, under our procedure, precludes the consideration of a motion for new trial. By their motion appellants sought a judgment in their favor. Had this motion been sustained the court would have entered a final judgment in their favor and against appellee. But when a motion in arrest is sustained there can be no judgment for either party. Each must pay his own costs. The plaintiff may bring an action again on a sufficient complaint. II Watson's Works Practice, p. 488, § 1912. The filing of a motion for judgment on the pleadings does not preclude the consideration of a subsequently filed motion for a new trial.

We are of the opinion the special findings of fact were

sufficient to sustain the conclusions of law. *Probst* v. *Probst* (1942), 220 Ind. 200, 41 N. E. 2d 608.

In our opinion there is but one real question to be determined by this appeal, that is, under the evidence herein, did the interest of the husband in the real estate which is the subject of this action pass to his trustee in bankruptcy? Appellants contend the interest of a bankrupt in real estate held by the entireties does not pass to his trustee in bankruptcy for the benefit of his creditors.

In 6 Am. Jur., p. 599, § 154, it is stated: "No portion of an estate by entireties passes to the trustee in bankruptcy of either of the spouses as an asset of the estate of the bankrupt."

In 8 C. J. S., p. 627, § 175-(b), it is stated:

> "Where, under the law of the state, the interest of either a husband or wife in land held by them as tenants by the entirety cannot be sold encumbered, or transferred without the consent of the other, nor be levied on or sold under judicial process against one of them, the interest of a bankrupt in land in which he is a tenant by entirety with his wife does not pass to the trustee in bankruptcy."

In Indiana a bankrupt's estate by entireties does not pass to his trustee for the benefit of creditors. *Echelbarger* v. *First Natl. Bank of Swayzee* (1936), 211 Ind. 199, 5 N. E. 2d 966; *First Natl. Bank of Goodland* v. *Pothuisje* (1940), 217 Ind. 1, 7, 25 N. E. 2d 436. Hence, if the real estate involved here was held by appellants as tenants by entireties the appellee has no interest in it.

But the appellee contends the interest of a debtor in a tenancy by the entirety which was created while the debtor was indebted and paid for wholly or partly with the funds of the debtor, is subject to execution for the

latter's debts. In support of this contention he cites, among others, the following cases: *Newlove* v. *Callaghan* (1891), 86 Mich. 297; *Detroit B. C. & W. R. Co.* v. *Lavell* (1923), 224 Mich. 572; *Lemerise* v. *Robinson et al.* (1928), 241 Mich. 528; *Probst* v. *Probst, supra.*

In *Newlove v. Callaghan, supra,* the husband gave his note on December 1, 1884. It was protested in January, 1885. In October, 1885, he and his wife purchased the real estate as tenants by entireties. The Supreme Court said: *"In the absence of any showing to the contrary, the defendant John Callaghan must be presumed to have paid one-half of the purchase price."* The Court then said: "Had the entire estate been placed in the wife's name, there could have been no question but that the same would be regarded as fraudulent under the statute, and it is no less a fraud upon creditors because the title has been taken in the name of the defendants jointly." (Our emphasis.)

In *Detroit B. C. & W. R. Co.* v. *Lavell, supra,* James Lavell gave the railroad the following conditional promise to pay:

"Roseburg, Michigan, Dec. 9, 1912.

"In consideration of the extension of the Detroit, Bay City & Western railroad from Peck, Sanilac County, to Roseburg, Sanilac county, Mich., I hereby agree to pay to the Detroit, Bay City & Western Railroad Company, the sum of $160, at Yale State Bank, one-half of this amount payable when first train reaches Roseburg, the remaining one-half one year thereafter. If above-mentioned road is not constructed by December 31, 1916, then this agreement is null and void.

"(Signed) James Lavell."

The railroad was completed and first train run over it July 16, 1916. At the time he gave the note Lavell owned in fee simple a farm worth $8,000. On Decem-

ber 12, 1913, Lavell and his wife made a quit claim for this land to an acquaintance for a recited consideration of $1, but admittedly without any consideration. This grantee immediately gave back to Lavell and his wife a quit claim deed purporting to convey the farm to them as tenants by the entireties. Lavell refused to pay the note. Judgment was rendered against him. The Supreme Court held the deeds void under the Michigan statute which renders void conveyance made with intent to hinder, delay or defraud creditors.

In *Lemerise* v. *Robinson, supra,* most of the payments on property held by entireties were made after the debt was contracted and *it did not appear that the wife contributed anything toward the purchase of the entireties property.*

In the case of *Probst* v. *Probst, supra,* John Probst, *with his own money,* paid the full purchase price for a farm and had it conveyed by the vendors to his son and daughter-in-law as tenants by the entireties. At the time of the purchase he was indebted in a sum exceeding $2,500. Our Supreme Court held this evidenced a secret parol trust for the benefit of John during his life and certain of his children after his death, which was void as against creditors.

We are in accord with the reasoning of these cases. They are based on elemental principles of honesty and justice. In these cases the creditor was *harmed* by the action of the debtor. A debtor may not defraud his creditors by placing assets which belong to the latter in property by entireties. This is the evil these cases condemn. When he attempts to do so, insofar as his creditors are concerned no estate by entireties is created. Under such conditions a trust is created for the benefit of creditors. In this case there is

no evidence to show that appellee was harmed by the transaction herein.

Appellee contends the rule announced in these cases is applicable to this case for two reasons: First he asserts upon the sale of the first Indiana tenancy by the entirety the proceeds thereof became subject to the existing claims of creditors of either the husband or the wife. Citing *Fogleman* v. *Shively* (1891), 4 Ind App. 197, 30 N. E. 909. In that case the appellant filed complaint and attachment against appellee Lewis Shively, a non-resident, for $775. At the same time he brought proceedings in garnishment against the appellee Quick charging him with having control or agency of certain money, etc., of said Shively which the sheriff could not attach by writ of attachment. Shively was defaulted. Appellee Quick, in one of his paragraphs of answer, alleged, in substance, that he had in his possession a certain note and bill of exchange payable to Shively; that they were the proceeds from the sale of real estate in this state owned by said Shively and his wife as tenants by entirety; that he had been employed by Shively and his wife to sell said real estate and, as their agent, he sold the real estate for $946.43 cash with which he purchased the bill of exchange for the purpose of transferring the money to the Shivelys at Los Angeles, Calif.; that he was notified by Shively that his wife was absent from California and the money could not be procured on said bill without her endorsement thereon; that by their direction he had the same drawn to Lewis Shively; that these funds had been garnished in his hands before it had been turned over to Lewis or his wife or before any division had been made between them. The answer further averred the money was held by Lewis and wife as tenants by entireties and was not subject to attachment or garnishment for the debt of

Lewis. The trial court overruled appellant's demurrer to this answer. This court, in reversing this case and ordering the trial court to sustain the demurrer, said:

"Where possession of the personal property of the husband and wife is taken by the husband, he should be presumed to take for a purpose consistent with the wife's interest, and should be regarded as holding the property for her as well as for himself. *By agreement with the wife, he may take it as his own, and use it accordingly.*

"We have assumed in this case that it is sufficiently shown that the note and bill represent the proceeds of the sale still regarded by the husband and wife as the property of both. We think that the facts, that the owners of this personal property are husband and wife, and that it represents the still undivided proceeds of real estate owned by them as tenants by entireties, do not affect the right of the appellant. The interest of the wife, who is not a party to the proceedings in attachment, is not like the interest of a partner in a debt due to the firm. The note and bill were in the name of the husband and in the possession of the agent. The interest of the wife is definitely shown, being a moiety of the proceeds of the sale of the land. . . .

"We are of the opinion that the interest of the husband might be subjected to the payment of his separate indebtedness under the proceedings in attachment and garnishment." (Our emphasis.)

There is a clear distinction between the last cited case and this one. In that case there was no showing the wife contributed anything to the purchase of the property and there, by direction of the husband and wife the proceeds from the sale were placed in the husband's name. In this case the evidence is uncontradicted that it was the wife's money which went into the first entirety property and when that property was sold she received and retained the proceeds as her own.

In the case of *Mercer* v. *Coomler* (1904), 32 Ind. App. 533, 69 N. E. 202, the facts were substantially as follows: John H. Coomler owned individually certain real estate in Howard County. In 1898, he and his wife executed to appellant a general warranty deed for said land. This land was encumbered and in 1899 appellant recovered a judgment for the sum of $250 against John Coomler for breach of the warranty in the deed of conveyance which judgment remained due and was wholly unpaid. The appellant had paid $11,000 for the Howard County land. In 1898, out of the proceeds of this sale, the Coomlers purchased as tenants by the entirety certain real estate in Grant County for the sum of $4,000. The balance received from the sale of the Howard County land was applied to the payment of the debts of the husband. After the purchase of the Grant County land by Coomlers the C. I. & E. Railroad Company entered upon this land and constructed a railroad across it. In 1899 John H. Coomler recovered a judgment against the Railroad Company for $1,000 by reason of said construction. Upon these facts appellant brought proceedings supplementary to execution, in which it was alleged the interest of John H. Coomler in the judgment against the Railroad Company together with other property owned by him and claimed as exempt from execution exceeded in value $600 and that he unjustly refused to apply the judgment or any part thereof to the settlement of appellant's judgment. The Railroad Company paid the amount of the judgment into court subject to the order of the trial court. The trial court found in favor of the Coomlers. In affirming the judgment of the trial court in that case, this court, in speaking of the appellant's contention, said:

"The learned counsel for the appellant, in argument, protests that it is not claimed on behalf of

the appellant that the appropriation proceeding by which the land was taken in Grant County, and in which the judgment for damages therefor was awarded, severed the unity of interest of husband and wife in the money realized from the land held by them; and it is urged by counsel that the underlying theory of the appellant's case is that he had an equitable right against the Grant county land of the Coomlers, because his money went into it—because it was purchased in part with money which was equitably his; and that his equity in the land followed the fund derived therefrom into court; that the money in court as a result of the condemnation of a right of way across the Grant County land is but the substitute for the land; and that as the land was purchased by the Coomlers with his money to the extent of $250, he having involuntarily furnished the money to buy the land, his right to be repaid is superior to any right of Susan Coomler."

This is, in effect, the contention of appellee in this case. In that case this court then said:

"The argument of the appellant based upon the theory that the Grant County land was purchased in part with the money of the appellant, and that therefore the interest of both husband and wife to such extent ought to be subject to the execution, cannot prevail, for the reason that the consideration for the Grant County land, as we have sought above to show, was not paid by the appellant, or with his money, but was paid with money owned by John H. Coomler, the title being taken in the names of him and his wife, as agreed between them when the wife joined in the conveyance of the Howard County land."

In the case of *Koehring* v. *Bowman* (1924), 194 Ind. 433 at page 437, our Supreme Court said:

"Estates by entireties do not exist as to personal property . . . except when such property is directly derived from real estate held by that title, as crops produced by the cultivation of lands

owned by entireties *or proceeds arising from the sale of property so held.* (Our Emphasis.)

Citing *Frost* v. *Frost* (1906), 200 Mo. 474, 98 S. W. 527, 118 Am. St. 689.

In *Schwind* v. *O'Halloran* (1940), 346 Mo. 486, the Supreme Court of Missouri held that the proceeds from the sale of property held by the entirety retains its entirety characteristics and such characteristics follow it upon reinvestment.

In the case of *Moore* v. *Von Goosen* (1930), 250 Mich. 67, 229 N. W. 451, the husband and wife owned several pieces of real estate as tenants by entireties. They sold some of them on land contracts in which they were described as tenants by the entirety. In one instance they took the lot, which was the subject of the action, in exchange for one of their properties. They took title to this lot in the same way. To erect a building on this lot they transferred their interest in a land contract for building material. They collected the remainder due on the contracts in cash and sold a remaining lot of their former holding for cash, the net of all of which was used to pay for labor and materials in the building. Three of the creditors furnished materials to the bankrupt on his personal credit which went into the construction of a house or houses on the former lots. Two creditors furnished him on his personal credit material which went into the building on the lot involved in that action. The Michigan Supreme Court then said, in part:

"Plaintiff urges that the (defendants') vendors' interest in the land contract, exchanged for material for the building, was personalty, citing *Detroit Trust Co.* v. *Baker,* 230 Mich. 551, 203 N. W. 154, 204 N. W. 773; *Bowen* v. *Lansing,* 129 Mich. 117, 88 N. W. 348, 57 L. R. A. 643, 95 Am.

St. Rep. 427, in which the evidence *not showing otherwise, it is presumed their interests are equal,* and that therefore the one-half interest of the bankrupt, so exchanged, may be reached by creditors. Defendants sold entirety property. They took back a contract to themselves as vendors and as tenants by the entirety. Their contract interest was held in the same manner and subject to the same law as the land itself, and the change from the holding in fee to an interest as vendors was without advantage to creditors. *Dickey* v. *Converse,* 117 Mich. 449, 76 N. W. 80, 72 Am. St. Rep. 568; *Detroit & Security Trust Co.* v. *Kramer,* 247 Mich. 468, 226 N. W. 234.

"It is also urged that the part of the consideration for the sale of the former entirety property, paid in cash and reinvested in the entirety property sought to be reached, was likewise, *the evidence not showing otherwise, owned by defendants equally, that it was personalty, and that the bankrupt's one-half interest, so invested, may be reached.* The consideration named in the contracts of sale was payable to the defendants, vendors, as tenants by entireties. There being no evidence on the matter, presumably it was so paid. Whether paid by check, draft, or in money, the record does not disclose. *By agreement, arrangement, or contract between them, defendants might hold such funds by entireties. Detroit & Security Trust Co.* v. *Kramer, supra. The mere exchange of one entirety property beyond the reach of creditors for other entirety property beyond the reach of creditors is not a fraud upon them. First State Bank* v. *Wallace,* 201 Mich. 673, 167 N. W. 887. The funds arose upon sale of entirety property, and were paid to the tenants by entirety. They were reinvested in entirety property. The evidence tends to show that the funds were held by entireties. There is nothing to indicate that the funds, entirety property at their inception, lost their character before being reinvested in the entirety property in question. We see no advantage to plaintiff in this regard." (Our emphasis.)

In the case of *American Wholesale Corporation* v. *Aronstein,* decided by the United States Court of Appeals for the District of Columbia (1926), 10 F. 2d 991, the facts were much stronger in favor of the appellants' position than they are in this case. The facts in that case, as set out in the opinion, are as follows:

> "In the year 1920 Aron Aronstein purchased *and with his own money* paid for two separate parcels of real estate, situate within the District of Columbia, one of which was used by him and his family as a residence and retail store; the other was an apartment house which was rented for about $350 a month. The property was conveyed to Aronstein and his wife by deeds of conveyance under which they became tenants by the entireties. It does not appear that Aronstein was insolvent at that time.
>
> "Afterwards, to-wit, in the year 1923, Aronstein became indebted to the appellants, respectively, upon certain promissory notes, which in the year 1924 were reduced to judgment and are yet unpaid. In the year 1923, Aronstein, being then liable upon said notes and being then insolvent, executed and delivered to his wife two several deeds, purporting to convey to her his interest in the real estate above referred to.
>
> "The appellants charge that the aforesaid original conveyance to Aronstein and his wife was a fraud upon his creditors, for the reason that she paid no part of the consideration for the property; also that the conveyance subsequently made by Aronstein to his wife for his interest in the property was without consideration, and was made with intent to hinder, delay, and defraud appellants in the collection of their claims." (Our emphasis.)

In affirming the decree of the District Court dismissing the creditors' bill, the court said:

> "At the time when the original conveyance was made to Aronstein and his wife, the former was

solvent, and moreover the claims of the appellants against him were not then in existence. Accordingly the appellants cannot attack that conveyance. As to the conveyance subsequently made by Aronstein to his wife, the estate was held by them as tenants by the entireties, and the appellants were not entitled to subject the separate interest of Aronstein to the payment of their claims. His conveyance to his wife accordingly could not hinder or delay them in the collection of their judgments."

In this case it is undisputed that the funds which appellants invested in the real estate here involved were the proceeds of the property in Hammond which was owned by appellants as tenants by the entirety. It is also undisputed that the wife received the money from the sale of the Hammond property and that she retained it as her property until she paid it to the grantor from whom the property herein was purchased. Under these circumstances we cannot see how appellee was harmed by this transaction.

But appellee then contends that tenancies by the entirety are not recognized in Illinois and property held by husband and wife is a joint tenancy and is subject to execution for the debts of either joint tenant to the extent of his interest; that under Illinois law a gift of a one-half interest in a joint tenancy is presumed even though one of the joint tenants furnishes the entire consideration. Citing, *Johnson* v. *Muntz* (1936), 364 Ill. 482, 4 N. E. 2d 826; *Van Antwerp* v. *Horan* (1945), 390 Ill. 449, 61 N. E. 2d 358; *Walker* v. *Walker* (1938), 369 Ill. 627, 17 N. E. 2d 567; *Spina* v. *Spina* (1939), 372 Ill. 50, 22 N. E. 2d 687; *Brod* v. *Brod* (1945), 390 Ill. 312, 61 N. E. 2d 675. Therefore, he contends one-half of the money invested in the Hammond property belonged to the husband individually and can be reached in this action.

It is true that under Illinois law the interest of either the husband or wife in a joint tenancy is subject to levy and sale for the debt of either to the extent of his or her interest. It is there held the execution severs the joint tenancy. But the attaching of a judgment lien upon the interest of a joint tenant or the making of a levy upon such interest does not destroy the joint tenancy. *People Trust & Savings Bank* v. *Haas* (1928), 328 Ill. 468; *Van Antwerp* v. *Horan, supra.*

It is clear from the record herein that during the time appellants owned the property in Illinois as joint tenants there was no judgment upon which execution could be had against the husband's interest in that real estate. Therefore, the joint tenancy continued until appellants sold the property.

The cases of *Walker* v. *Walker, supra; Spina* v. *Spina, supra,* and *Brod* v. *Brod, supra,* sustain appellee's contention that under Illinois law a gift of one-half interest in a joint tenancy is presumed, even though one of the joint tenants furnishes the entire consideration. Each of those cases involved a dispute between the husband and wife over their interest in the property. But this presumption is not conclusive. It is a presumption of fact which may be rebutted. *Partridge* v. *Berliner* (1927), 325 Ill. 253, 156 N. E. 352. In that case the husband purchased the real estate with his money. He consulted his attorney about a joint tenancy. He said that he was satisfied with the joint tenancy provision that his wife should have the property at his death, but he wanted the entire control of the property and wanted it to be his so long as he lived. With this understanding title was taken as joint tenants. Subsequently the wife became insane and her Conservator brought an action

for partition. The Supreme Court of Illinois held that under such circumstances the wife had no such interest as authorized a partition and that the Conservator's action was properly dismissed. The presumption fails on proof of a contrary intention of the parties. *Byerly* v. *Byerly* (1936), 363 Ill. 517, 2 N. E. 2d 898.

In this case the burden was on the appellee to establish by a fair preponderance of the evidence that one-half of the funds invested in the Marshall County farm belonged to the husband and that at the time it was purchased he did not have sufficient other property to pay his debts. It was also incumbent upon appellee to show he was thereby injured. In our opinion, on the record before us he has not sustained this burden. The evidence as heretofore shown is undisputed that the wife received and kept the proceeds from the sale of the Hammond property until she paid it on the purchase of this farm. The same is true of the proceeds from the sale of the property in Calumet City, Illinois. The whole record leads inescapably to the conclusion that she did not intend to and did not in fact give her husband a half interest in the Illinois property. (Even if this were not true, the husband would only be entitled to one-half of the proceeds from the sale of that property. The equity in the property sold for between $1,500 and $2,000. Hence his interest could not have been more than $1,000.) It is further undisputed that if the wife had not applied her earnings to the payment of taxes, principal and interest on the mortgage, the Calumet City property would have been lost. Certainly if she kept her earnings and did not apply them to the indebtedness on the Calumet City, Illinois, property and that property was taken over by the mortgagor, then if she subsequently placed the money she saved from her earnings in this property

as tenants by the entirety, the appellee would have no right to any part of it. Upon the record herein we are unable to see how appellee was in any way injured by this transaction.

Therefore, the judgment is reversed.

Draper, C. J. did not participate in the decision of this case.

NOTE.—Reported in 76 N. E 2d 856.

## ON PETITION FOR REHEARING

ROYSE, J.—The appellee, in his petition for rehearing, says that in our opinion we have transgressed the well-established rule that an appellate tribunal cannot weigh the evidence and thereby substitute its decision for that of the trial court. He bases his contention on the answer the husband made to certain questions propounded by appellee's attorney at the conditional examination of the husband before the Referee in Bankruptcy for the Northern District of Indiana in the matter of the husband's bankruptcy. These questions and answers are as follows:

> "Q. Mr. Vonville, when you purchased that farm the money that you used to purchase it was contributed by both you and your wife was it not?
> "A. That is right; we sold a piece; sold a piece of property.
> "Q. And what piece of property was that?
> "A. On May Street in Hammond.
> "Q. I say you and your wife each contributed 50-50 per cent as a result of the sale of that May Street property?
> "A. Yes."

We did not refer to this evidence in our original opinion because we did not regard it as substantial evi-

dence with probative value to support the burden which is on appellee in this case. By substantial evidence we mean such relevant evidence as a reasonable mind might accept as sufficient to support a conclusion. *Consolidated Edison Company* v. *National Labor Relations Board* (1938), 305 U. S. 197, 229, 230, 59 Sup. Ct. 206, 83 L. Ed. 126, 140; 9 Wigmore on Evidence (3rd ed.) § 2494, p. 299. By probative value we mean evidence "carrying quality of proof and having fitness to induce conviction." *Carter* v. *Commonwealth* (1932), 245 Ky. 257, 53 S. W. 2d 521.

We have not changed our opinion in reference to these questions and answers for the following reasons:

It is a matter of common knowledge that it is an almost universal custom for married persons to claim equal ownership in the property and possessions of each other. The term "my" or "our" is used constantly and interchangeably in reference to children of the marriage. The same is true of an automobile, the legal title to which is in either the husband or the wife. The record of the examination at which the above quoted testimony was given leads inescapably to the conclusion that this was the idea the husband had in mind. Because, when he was questioned in reference to a tractor acquired after the purchase of the farm, to the following question: "Did you buy that from the proceeds of the farm?" he answered: "That is meaning my wife? Yes." Furthermore, in the trial of this cause the husband testified he did not understand the question when it was propounded to him at the hearing before the Referee.

In equitable actions of this nature the rule is that "While a resulting trust may be established by parol evidence: 'It is settled by a complete unanimity of decisions that *such evidence must be clear,*

*strong, unequivocal, unmistakable, and must establish the fact of the payment by the alleged beneficiary beyond a doubt.'* " (Our emphasis.) *Bullerdick* v. *Miller* (1926), 85 Ind. App. 369, 378, 152 N. E. 280; *Pillars* v. *McConnell* (1895), 141 Ind. 670, 40 N. E. 689; *Hutton* v. *Cunningham* (1902), 28 Ind. App. 295, 297, 61 N. E. 1138. To the same effect see long list of authorities from England, Canada, United States and most of the states of the Union, 23 A. L. R. 1502 and 1516. The evidence now relied on by appellee does not bring him within this rule, particularly in view of all the evidence in this case which we set out in substance in our original opinion.

We have carefully re-examined the questions presented by this appeal and adhere to our original opinion that appellee did not sustain the burden which was ▮ upon him to show he was harmed by this transaction. Furthermore, it is clear from the record that in the long interim intervening between the time the debt to the Bonding Company accrued and the commencement of this action the interests of not only the husband but of the innocent wife have so materially changed that the judgment of the trial court does them irreparable injury. Equity will not sanction such conduct. *Penn Mutual Life Insurance Company* v. *Austin* (1898), 168 U. S. 685, 42 L. Ed. 626, and authorities there cited; *Ryason* v. *Dunten* (1905), 164 Ind. 85, 95, 96, 73 N. E. 74; *Ferguson* v. *Boyd* (1907), 169 Ind. 537, 548, 549, 81 N. E. 71, 82 N. E. 1064; *Kroeger* v. *Kastner* (1937), 212 Ind. 649, 653, 10 N. E. 2d 902; *Grantham Realty Corporation* v. *Bowers, Jr., Trustee* (1939), 215 Ind. 672, 685, 686, 22 N. E. 2d 832.

The petition for rehearing is denied.

DRAPER, C. J.—did not participate in the decision of this case.

## DISSENTING OPINION ON PETITION FOR REHEARING

CRUMPACKER, J.—The appellees' petition for a rehearing together with their brief in support thereof have convinced me that this appeal should be reheard and the judgment affirmed.

It must be conceded that no portion of an estate by entireties passes to a trustee in bankruptcy of either of the spouses as an asset of the estate of the bankrupt. This refers of course to tenancies of that nature which are legitimately created and not in fraud of the creditors of either spouse. Fraud vitiates any transaction upon which it lays its hands and there is nothing so sacred and inviolable about estates by entireties that they are placed beyond the reach of that principle of law. The appellees' entire case is built around the concept that when a debtor joins with his wife in the purchase of real estate and they take title thereto as tenants by entireties, the interest of the debtor in such estate, to the extent of his financial contribution thereto, is subject to execution by the debtor's creditors, provided he had, at the time of such conveyance, and still has no other property, subject to execution, sufficient to pay his debts. That such concept is sound cannot be doubted when considered in the light of the Supreme Court's decision in *Probst* v. *Probst* (1942), 220 Ind. 200, 41 N. E. 2d 608.

In the trial of this case the court found the facts specially and stated its conclusions of law thereon and in our decision of January 29, 1948, 76 N. E. 2d 856, we held that the facts so found are sufficient to sustain the court's conclusions of law. In so holding I think we were clearly right. We also held that all facts found by the court were sustained by sufficient evidence except

"Finding No. 4." which we concluded was unsupported. In this I believe we were in error. "Finding No. 4." constitutes the very heart of the appellees' case. Without it they must fail and with it they must recover in the absence of other prejudicial error, of which we found none in our initial consideration of the cause. Thus in view of its importance I repeat the finding herewith: "That the said defendants, George E. Vonville and Margaret Vonville, each contributed approximately equal sums to the purchase of said farm, said George E. Vonville contributing thereto his own funds in the approximate sum of $1,500; that at the time of said purchase and conveyance, the defendant George E. Vonville was indebted to the Fidelity & Deposit Company of Maryland, a corporation, in the sum of $11,036.37, with interest thereon at the rate of six percent per annum from the 30th day of March, 1936, which indebtedness was later reduced to a judgment as above described; that at the time of said conveyance and continuously ever since, the defendant, George E. Vonville, had no other property subject to execution out of which the claim of the Fidelity & Deposit Company of Maryland, a corporation, could or can be collected."

In our initial opinion we repudiated this finding only so far as it states that the appellants "each contributed approximately equal sums to the purchase of said farm, said George E. Vonville contributing thereto his own funds in the approximate sum of $1,500." In support of the finding in that particular the appellees call our attention to the following testimony of George E. Vonville:

"Q. Mr. Vonville, when you purchased that farm the money that you used to purchase it was contributed by both you and your wife was is not?

"A. That is right; we sold a piece; sold a piece of property.

"Q. And what piece of property was that?

"A. On May Street in Hammond.

"Q. I say you and your wife each contributed 50-50 per cent as a result of the sale of that May Street property?

"A. Yes."

In the court's opinion on the petition for a rehearing this testimony is disposed of with the statement that it was not "substantial evidence with probative value to support the burden which is on the appellee in this case." I think the trial court, considering all the evidence in the case, might justifiably have reached that conclusion but the testimony in question evidently did not so impress him. It is the testimony of a party to the litigation against his own interest, pertinent, direct and to the point, and to characterize it as unsubstantial and of no probative value, it seems to me, involves the process of weighing it against all other facts and circumstances in the case and in the end substituting our estimate of its value for that of the trial court. This the Supreme Court, as late as February 2, 1948, in *Wright* v. *Peabody Coal Co.* (1948), 225 Ind. 679, 77 N. E. 2d 116, has said we cannot do. A learned dissent by Gilkinson, J., in the case just cited, justifies the repudiation of certain testimony upon which the Industrial Board predicated an award but the testimony involved was the opinions of certain experts based on mere conjecture, surmise or guess and, resting on no substantial factual foundation as the judge points out, such opinions had no probative value whatever. Such was not the prevailing opinion of the court but, accepting its reasoning for present application, we are faced with no such situation here. The testimony in question is the direct, unequivocal statement of facts concerning a transaction of which no one was in a position to know

more about than the witness. Other facts and circumstances in the case may weaken it perhaps—may even preponderate against it—but that was for the trial court to determine and not for us.

For the reasons stated I cannot join with the majority in characterizing this evidence as unsubstantial and having no probative value and, unless it can be so disposed of, it sustains "Finding No. 4." and the judgment must be affirmed.

NOTE.—Reported in 77 N. E. 2d 759.