## WEIL PACKING COMPANY v. ALLEN CLUCK

[No. 18,293.   Filed June 17, 1952.   Rehearing denied
September 17, 1952.   Transfer denied November 12, 1952.]

*Newman & Salm,* of Evansville, for appellant.

*Theodore Lockyear, Russell S. Armstrong* and *George C. Barnett,* all of Evansville, for appellee.

WILTROUT, J.—Appellee filed his petition to set aside an award entered in his favor while he was a minor, on the ground that it was procured by appellant by fraud, and he requested an award of double compensation. A special answer alleged the petition was not filed within the time limited by statute for filing the same.

The Industrial Board found the following facts:

"That on the 16th day of February, 1945, the plaintiff, age sixteen years, was in the employ of the defendant, Weil Packing Company, at an average weekly wage of $32.17; that on said date he sustained personal injury by reason of an accident, arising out of and in the course of his employment with the defendant, of which said accidental injury the defendant had knowledge and did furnish the statutory medical attention and supplies; that said accidental injury consisted of an amputation of plaintiff's right arm below the elbow.

"It is further found that on the 9th day of April, 1945 one Daisy I. Kinney, was duly appointed the legal guardian for the said plaintiff herein by the Probate Court of Vanderburgh County, Indiana.

"That thereafter, on the 7th day of June, 1945, the Industrial Board of Indiana approved a compensation agreement, entered into by Daisy I. Kinney and said defendant, under the terms of which the defendant, Weil Packing Company, agreed to pay to said plaintiff, Allen Cluck, compensation for a period of two hundred weeks, based on a 100% impairment to the plaintiff's right arm below the elbow. . . .

"That pursuant to said compensation agreement the Workmen's Insurance Carrier, Employers Mutual Liability Insurance Company, paid to the said plaintiff and his said duly appointed legal guardian the compensation benefits pursuant to said compensation agreement.

"It is further found that on the 10th day of January, 1951, the said plaintiff filed his petition to set aside the said original award and to enter an award for double compensation. . . .

. . . .

"It is further found that at the time the said plaintiff sustained his accidental injury he was employed by the said defendant, Weil Packing Company, in an occupation dangerous to life and limb, and in violation of the Child Labor Law of the State of Indiana and was therefore entitled to double compensation, one-half of which said compensation was to be paid by the defendant, Weil Packing Company, and one-half to be paid by the Workmen's Compensation Insurance Carrier, the Employers Mutual Liability Insurance Company.

"It is further found that the defendant, Weil Packing Company, fraudulently procured the said compensation agreement entered into by said parties, and its approval by the Industrial Board of Indiana; and that by reason thereof such fraud tolled the Statute of Limitation in said cause.

"The Full Industrial Board of Indiana now finds that plaintiff's petition to set aside the original award and to enter an award for double compensation filed on the 10th day of January, 1951, should be sustained."

The question presented here which is determinative of this review is whether the Board's finding that appellant procured the compensation agreement or its approval by the Board is supported by any evidence of probative value.

The oral evidence is brief. Evidence was introduced that appellee was injured while working on a meat grinder. He testified: "It was not guarded by any device and it had no safety appliances on it. I would take the meat and throw it into the ginder with my hands. Meat would choke up in the grinder when too much was thrown in. . . . On February 16, 1945, I had some big pieces of meat and the grinder choked up and I went down in it with my hand. . . . I didn't use a shovel to put the meat in the grinder very often because it choked up, but there was a shovel provided." Pictures of the grinder were introduced.

Appellant also introduced evidence that no one had been injured on the machine in twenty years prior to this time; that similar machines were used in various packing plants throughout the country without accident.

Burns' Stat., §40-1701(b) provides:

"Except as herein otherwise provided, if the employee be a minor who, at the time of the accident, is employed, required, suffered or permitted to work in violation of any of the provisions of any of the Child Labor Laws of this state, the amount of compensation and death benefits, as provided in this act, shall be double the amount which would otherwise be recoverable. . . . If such employee be a minor who is not less than sixteen (16) years and not more than eighteen (18) years of age and who at the time of the accident is employed, suffered, or permitted to work at any occupation which is not prohibited by law, the provision of this act prescribing double the amount otherwise recoverable shall not apply."

The applicable provision of the Child Labor Law is Burns' 1948 Replacement, §28-523:

"No minor under the age of eighteen (18) years shall be employed, permitted or suffered to work in any capacity in any of the following occupations: . . . or in any other occupation dangerous to life or limb. . . . of such minor."

Appellee contends that his employment was in. an occupation dangerous to life or limb, and the Board so found.

Inasmuch as appellee's occupation was not one of those specifically prohibited by statute, it was a question of fact as to whether it was dangerous to life or limb. *Cash* v. *Rockwood Mfg. Co.* (1947), 117 Ind. App. 605, 75 N. E. 2d 173. While the mere fact that a serious injury actually occurs, standing alone, is not conclusive as to whether the occupation is a prohibited one, *Cash* v. *Rockwood Mfg. Co.*, *supra*, the Board's finding is amply sustained by the evidence.

Appellee's mother was appointed his guardian, and entered into the compensation agreement. She had no conferences or negotiations with appellant or its insurance carrier and they made no representations to her, but the matter was handled through her attorney. From all that appears she had full knowledge of the facts. The attorney was one of her own choice, without any recommendations having been made by appellant. She was advised by her attorney that the sum covered by the agreement was all she could get. She believed him and signed the agreement in his office. What conferences or negotiations the attorney had, or what, if any, representations were made to him is not disclosed by the evidence. He was not called as a witness. These

facts do not support the finding that the agreement was procured by fraud. We, however, regard this finding as surplusage, in view of the further finding that approval of the agreement was procured by fraud.

The agreement as to compensation was filed with the Board on June 6, 1945, along with the report of the employer's physician and the guardian's adoption of the report. The employer's Form 24, report of injury, was filed at the same time although the injury occurred on February 16, 1945. The agreement was approved the following day. Burns' Stat., §40-1517 reads in part:

"Within seven (7) days after the occurrence and knowledge thereof, as provided by section 22, (§40-1222), of an injury to an employee causing his death or his absence from work for more than one (1) day, a report therof shall be made in writing and mailed to the industrial board for that purpose."

The report of injury was not completely filled out, some of the questions being only partially answered and no answers at all being made to twelve of them. The questions remaining unanswered called for information concerning the machine, tool or thing causing the injury, the kind of power, the part of the machine on which the accident occurred, whether a safety appliance or regulation was provided and in use, and whether the injury was caused by injured's failure to use or observe a safety appliance or regulation. Appellee's right forearm was completely severed about four inches below the elbow. Question 26, reads: "Nature and location of injury (describe fully exact location of amputations or fractures, right or left)." The answer was, "Injured right hand and wrist." In the compensation agreement in the place calling for the nature of the injury it was described simply as "right hand."

"Where fraud is in issue the whole transaction from beginning to end may be scrutinized and circumstances shown as throwing light upon the intention of the party charged." *Dearing* v. *Speedway Realty Co.* (1942), 111 Ind. App. 585, 40 N. E. 2d 414.

The fact that the agreement was for only half the sum to which appellee was entitled is one factor to be considered. 24 Am. Jur., Fraud and Deceit, §260, p. 93. It is not an unreasonable inference, considering all of the evidence, that appellant deliberately withheld facts from the Board which it was its duty to supply, which facts would have shown the dangerous nature of appellee's occupation, with intent to deceive the Board, and so presented the matter as to procure its approval by lulling the Board into approving the agreement without ascertaining the material facts.

The finding of fraud in the procurement of the approval of the agreement by the Board is sustained by the evidence. The award is therefore affirmed with the statutory 5% increase.

Royse, P. J., dissents with opinion.

Achor, C. J., concurs in the dissent.

## DISSENTING OPINION

ROYSE, P. J.—I cannot agree with the majority opinion in this case. Appellee herein had the burden of establishing by a fair preponderance of substantial evidence with probative value that the work he was doing at the time of his injury was dangerous to life or limb, and that the original award was made by reason of the fraud of appellant.

Substantial evidence means relevant evidence which a reasonable mind will accept as sufficient to support a conclusion. By probative value is meant evidence "Carrying quality of proof and having fitness to induce conviction." *Vonville, Et Ux* v. *Dexter, Trustee* (1948), 118 Ind. App. 187, 208, 77 N. E. 2d 759 (Transfer denied). In other words, such evidence must have such convincing qualities as to give rise to something more than mere speculation or conjecture.

I do not believe the evidence set out in the majority opinion sustains either of the two facts which appellee had to prove to sustain the award of the Board herein. Although there was evidence from a number of packing companies regarding the meat grinder, there was no evidence it would be hazardous to a sixteen-year old boy who operated it as directed.

It is a well established principle of our law that a judgment will not be set aside for fraud unless the evidence of such fraud is clear and positive. I know of no reason why this rule is not applicable to awards of the Industrial Board. In this case the evidence set out in the majority opinion does not meet this requirement. It seems to me there is not a scintilla of evidence that appellant did any act which constituted a fraud on appellee or the Industrial Board. Certainly omissions on the original report did not deceive the Board. With this report they had the statement of the Doctor as to the nature and extent of appellee's injuries. They also knew his age and that the injury was caused by a meat grinder.

I believe the award should be reversed.

Achor, C. J., concurs in this opinion.

NOTE.—Reported in 106 N. E. 2d 484.